

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. 0-3713
Re: (a) Is it necessary that Texas Gulf
Sulphur Company, a domestic cor-
poration, keep a stock certifi-
cate book, stock transfer ledger
and other permanent records with-
in the state of Texas even though
it has a stock transfer agent in
New York?
(b) Are such records required to re-
flect all stock transfers by the
corporation or only such transfers
as occur within the state and are
taxable under Art. XV, H.B. No. 8,
Acts, Regular Session, 47th Leg.?
(c) Will such stock transfers in Texas
on the records of the company be
taxable under said Act, even
though all other acts, agreements,
etc. necessary to effect the sale
or transfer of stock certificates
of such corporation, occur beyond
the limits of the state of Texas?

Dear Sir:

Your letter of June 17, 1941 submits for our opinion
the following question, which we quote therefrom:

"The Texas Gulf Sulphur Company is chartered
under the laws of Texas and is domiciled in Harris
County Texas. This corporation's stock (no par
value) is listed on the New York Stock Exchange.
There are no stock transfer records kept in Texas
as the stock transfer agent is in New York.

"Section 6 of Article XV of House Bill No. 8
of the Regular Session of the Forty-seventh Leg-
islature reads in part:

"'* * *every person * * *engaged in whole or

in part in making or negotiating of sales, agreements to sell, deliveries or transfers of shares or certificates taxable under this Article, or conducting or transacting a brokerage business, shall keep or cause to be kept at some accessible place within the State of Texas, a just and true book of account, in such form as may be prescribed by the Comptroller, wherein shall be plainly and legibly recorded in separate columns, the date of making every sale, agreement to sell, delivery or transfer of such shares or certificates, the name and number of shares thereof, the face value, the name of the seller or transferrer, the name of the purchaser or transferee, * * *'

"Please tell me whether or not it will be necessary that Texas Gulf Sulphur Company keep stock transfer and other records within the State of Texas and whether or not these records shall include all transfers of stock by the corporation.

"If the law requires that these records shall include all transfers of stock by the corporation, and no other act necessary to effect said transfer is done in Texas, will such transfers be subject to the tax?

"I am enclosing a copy of a letter from Mr. John M. Corbett of Bay City, Texas, with reference to this matter."

The Texas Gulf Sulphur Company will not be required to make, keep or maintain in Texas any records of its stock transfers under that portion of Section 6, Article XV, House Bill No. 8, Regular Session, Forty-seventh Legislature, quoted in your letter, because same refers either to persons or corporations engaged in buying, selling, delivering or transferring stock, for themselves, as principals, or as brokers or agents for others. That portion of Section 6 of the cited Act which is pertinent and applicable to the Texas Gulf Sulphur Company and other corporations whose stock is trafficked in, reads as follows:

"Every association, company, or corporation, or business conducted by a trustee or trustees shall keep or cause to be kept at some accessible place within the State of Texas a stock certificate book and a just and true book of account, transfer ledger or register, in such form as may be prescribed by the Comptroller wherein shall be

plainly and legibly recorded in separate columns the date of making every <u>transfer of stock or other cer-</u><u>tificates included within this Article,</u> the name and the number of shares thereof, the serial number of each surrendered certificate, the name of the parties surrendering such certificate, the serial number of the certificate issued in exchange there-for, the number of shares covered by said certifi-cate, the name of the party to whom said certifi-cate was issued and the <u>face value of the stamps at-</u><u>tached in payment of the tax on the transfer of the</u> <u>certificate.</u> * * *

"* * *

"* * * . It shall also retain and keep all surrendered or canceled shares or certificates and all memoranda relating to the sale or transfer of any thereof. All such books of account, transfer ledgers, registers, and certificate books, shall be retained and kept as aforesaid for a period of at least two (2) years subsequent to the date of the last entry made therein as herein required; and all such surrendered or canceled shares or certificates and memoranda <u>relating to the sale or transfer of</u> <u>certificates taxable under this Article,</u> shall be retained and kept for a period of at least two (2) years from the date of the delivery thereof. <u>For</u> <u>the purpose of ascertaining whether the tax imposed</u> <u>by this Article has been paid,</u> all such books of account, transfer ledgers, registers, certificate books, surrendered or canceled shares or certificates and memoranda relating to the sale or transfer there-of, shall at all times between the hours of ten o'clock in the forenoon and three o'clock in the afternoon, except Saturdays, Sundays, and legal hol-idays, be open to examination by the Comptroller or his duly authorized representative." (Emphasis supplied).

It is apparent from the underlined portions of this statute that only such stock transfer records are required to be kept by the Texas Gulf Sulphur Company as pertain to <u>tax-</u><u>able transactions,</u> under the above-cited stock transfer tax act. This language of the statute negatives any intention on the part of the Legislature to require the making and keeping of the described records with reference to sales or transfers of shares or certificates or stock which are not taxable under the Act. These records are only required to be kept for a period of two (2) years and are merely to assist the Comp-troller in the effective enforcement of the Act.

But this cannot be said of other pertinent provisions of the Constitution of Texas and statutes thereunder. Article 10, Section 3, Constitution of Texas, provides, in part, as follows:

"Sec. 3. Every railroad or other corporation, organized or doing business in this State under the laws or authority thereof, shall have and maintain a public office or place in this State for the transaction of its business, where transfers of stock shall be made and where shall be kept for inspection by the stockholders of such corporations, books, in which shall be recorded the amount of capital stock subscribed, the names of the owners of the stock the amounts owned by them respectively, the amount of stock paid, and by whom, the transfer of said stock, with the date of the transfer, the amount of its assets and liabilities, and the names and places of residence of its officers. * * * * *"

Article 1358, Revised Civil Statutes, reads as follows:

"Each corporation or joint stock company of every description, whether organized and acting under a special charter or general law of this State, shall keep its principal office within the State."

Article 1328, Revised Civil Statutes, in connection with the duties of directors, provides as follows:

"They shall cause a record to be kept of all stock subscribed and transferred, and all business transactions. Their books and records shall at all reasonable times be open to the inspection of any stockholder."

Article 1334, Revised Civil Statutes, reads as follows:

"The stock of any corporation created under this title shall be deemed personal estate, and shall be transferable only on the books of the corporation in such manner as the by-laws may prescribe."

The requirements of the last statute quoted have been held by the courts to be mandatory; 10 TEXAS JURISPRU-

DENCE 814. We think the constitutional and the other statutory provisions, quoted above, should be similarly regarded because of the use therein of the mandatory term "shall." Hence, we are constrained to hold that the Texas Gulf Sulphur Company, in failing or refusing to make, keep and maintain in Texas the stock transfer records and other records contemplated by the above constitutional and statutory provisions, is violating the plain letter of said provisions and the public policy of the State, as declared by the Constitution.

By this conclusion we do not mean to say that the Texas Gulf Sulphur Company may not continue to maintain a stock transfer agent and stock transfer records in the state of New York or elsewhere beyond the limits of Texas. We merely intend to say that such extra state agents and records must be considered cumulative and additional to the records required by the Constitution and statutes to be made and kept at all times in Texas. The latter records are controlling and mandatory, required by law to be kept for the protection and benefit of stock holders; the extra-territorial records, if any, are permissive and are kept, in the discretion of the corporation, merely for the convenience of those buying and selling stocks in other states.

Moreover, we find nothing in the language of these controlling constitutional and statutory provisions to indicate an intention on the part of the Legislature to limit the keeping in Texas of stock transfer records to such sales, transfers or transactions as occur in Texas and are taxable under Article XV, House Bill No. 8, Regular Session, Forty-seventh Legislature, as in the case of section 6 of said Act, hereinabove discussed. All sales or transfers of shares or certificates of stock, whether intrastate or extrastate, must be recorded on the transfer records of the corportation and not merely such records of sales, transactions and transfers as are taxable under said Act. This is the plain intendment and purpose of such provisions.

The accrual of a stock transfer tax on stock transfers, made by the required stock transfer agent in Texas or reflected in the stock transfer records and other pertinent records of the Texas Gulf Sulphur Company required to be kept in Texas, is indicated by the following language of Section I of the Act:

"There is hereby imposed and levied a tax as hereinafter provided on all sales, agreements to sell, or memoranda of sales, and all deliveries or transfers of shares, or certificates of stock, or certificates for rights to stock, or certifi-

cates of deposit representing an interest in or representing certificates made taxable under this Section in any domestic or foreign association, company, or corporation, or certificates of interest in any business conducted by trustee or trustees made after the effective date here, * * *."
(Empahsis Supplied).

The tax levied by this Act is an excise tax upon the privilege of transferring shares or certificates of stock by sale or gift, and the duty to pay such tax is imposed upon the seller, or transferror thereof. This tax measure, of course, can have no extra-territorial operation, under fundamental principles of law and comity, but a tax will accrue and become collectible if any one of the following four transactions or events occurs within the state of Texas:

(1) An executory contract or agreement to sell shares or certificates of stock, whether oral or evidenced by the "bill or. memorandum of sale" required by Section I of the Act. (The phrase "memoranda of sales" specifically named in the tax levy, to our minds, does not enumerate another or fifth transaction to be taxed but merely refers to the written evidence of "sales" or "agreements to sell," designated in Section I as taxable transactions).

(2) An executed contract of sale of shares or certificates of stock, whether oral or evidenced by the "bill or memorandum of sale" required by Section I of the Act. This taxable transaction refers to an executed contract of sale of shares or certificates (stock delivered and purchase money paid), in contra-distinction to an executory but absolute and unconditional contract to sell such shares or certificates.

(3) A delivery of shares or certicicates of stock, etc.

(4) A transfer of shares or certificates of stock upon the official books and records of the corporation.

We think it is not the intention of this Act to levy a burdensome and cumulative tax on each and every one of the transactions enumerated above and in Section 1 of the Act as taxable, even though they all occur in Texas; but rather the intention is manifest to reach and tax only one of such trans-

actions or steps leading to a complete transfer of such shares or certificates from one stockholder to another. For instance, if the executory contract or agreement to sell shares or certificates of stock is subject to the tax because it is executed in Texas, then the subsequently executed sale, delivery or transfer on the corporate records of such shares or certificates, in successive steps, will not be taxed. Similarily, if the sale of such shares or certificates occurs in Texas, so as to be taxable, then the subsequent delivery or transfer upon the records of the corporation of such shares or certificates will not be taxable.

On the other hand, if each and all of the taxable transactions enumerated in the statute and above, transpire beyond the territorial limits of Texas, except the transfer of such shares or certificates upon the certificate books, transfer ledgers or other proper official records of the Texas Gulf Sulphur Company, by it or by a duly constituted transfer agent, and this latter act or transaction is caused and required, under the mandatory constitutional and statutory provisions above discussed, to be done and recorded in Texas, then such transfer will be subject to the excise stamp tax in question. Stated more concretely, such required transfer will be taxable even though the agreement or contract to sell, the executed sale and the delivery of such shares or certificates was executed and done upon the floor of the New York Stock Exchange so as to be exempt from this tax under the principles discussed in our opinion No. 0-3594, directed to you.

Trusting the foregoing fully answers your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

PMN:ob:jrb:wc

By s/Pat M. Neff, Jr.
Assistant

APPROVED JULY 29, 1941
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE BY BWB, CHAIRMAN